Judge JACOBS concurs in part and dissents in part in a separate opinion.
CHIN, Circuit Judge:
In 1994, Congress enacted the Driver’s Privacy Protection Act (the “DPPA”). As its name suggests, the DPPA, with limited exceptions, protects drivers’ privacy by prohibiting state motor vehicle departments and others from disclosing “personal information” drawn from motor vehicle records.
In this case, defendant Aron Leifer, a private citizen, engaged in a verbal altercation with the driver of a motor vehicle. Miffed, he wrote down the license plate number of the car. Using an online private investigative service and paying a fee of just $39.00, Leifer was later able to use the license plate number to obtain the name and home address of the vehicle’s owner, plaintiff-appellant Erik H. Gordon. Leifer then embarked on a campaign to harass Gordon and his family.
Gordon commenced this action below against Leifer and the entities and individuals who obtained the information from the New York State Department of Motor Vehicles and released it, ultimately, to Leifer. Gordon asserted claims under the DPPA and state law. Gordon eventually *45 settled his claims against Leifer, but the district court (Berman, J.) dismissed his claims against the remaining defendants on summary judgment. Gordon appeals. We affirm in part and vacate and remand in part.

BACKGROUND

A. Statutory Framework
Congress passed the DPPA in 1994. See Pub.L. No. 103-322, tit. XXX (codified as amended at 18 U.S.C. §§ 2721-2725). The DPPA generally restricts state departments of motor vehicles (“DMVs”) from disclosing personal information drawn from motor vehicle records. 18 U.S.C. § 2721(a); see also Reno v. Con-don, 528 U.S. 141, 149-50, 120 S.Ct. 666, 145 L.Ed.2d 587 (2000) (upholding constitutionality of DPPA). Similarly, private citizens or entities ordinarily may not obtain, disclose, or resell personal information unless permitted by statute. 18 U.S.C. §§ 2722(a), 2721(c). Notwithstanding these default rules of non-disclosure, the DPPA identifies fourteen “permissible uses” — exceptions from the default rule— for which personal information may be obtained, disclosed, used, or resold. Id. § 2721(b)-(c). Penalties, both civil and criminal, enforce “the rights of private citizens to be left alone.” 139 Cong. Rec. S15766 (daily ed. Nov. 16,1993) (statement of Sen. Harkin), available at 1993 WL 470986; id. at S15765 (statement of Sen. Robb) (noting that DPPA “would place safeguards on the privacy of the driver and vehicle owners”); see also 18 U.S.C. §§ 2723-2724.
The DPPA was enacted following the highly publicized murder of an actress, whose stalker-cum-assailant had received her home address through an information request at a local DMV. Andrea Ford, “Fan Convicted of Murder in Actress’ Slaying,” L.A. Times, Oct. 30, 1991; see also, e.g., 139 Cong. Rec. E2747 (daily ed. Nov. 3, 1993) (statement of Rep. Moran), available at 1993 WL 448643. During the floor debate, members of Congress emphasized that personal information accessed from state DMVs was often used in connection with criminal or threatening behavior. See, e.g., 139 Cong. Rec. E2747 (daily ed. Nov. 3,1993) (statement of Rep. Moran), available at 1993 WL 448643; 139 Cong. Rec. S15762, S15766 (daily ed. Nov. 16, 1993) (statements of Sen. Boxer and Sen. Harkin), available at 1993 WL 470986. The DPPA was therefore enacted to limit the disclosure of personal information drawn from motor vehicle records and to prevent its misuse.

B. Data Brokers & Resellers

Defendant-appellee Reid Rodriguez is the co-owner and Chief Operating Officer of defendant-appellee Softech International, Inc. (together, “Softech”). Softech acts as a “gateway,” providing access to motor vehicle records of all fifty states, the District of Columbia, Puerto Rico, and six provinces in Canada. See “MVR (Driving Records),” Softech International Inc., http://www.softechinternational.com/ products_mvrdr.html (last visited July 29, 2013). A data broker, Softech “collects] information, including personal information about consumers, from a wide variety of sources for the purpose of reselling such information to their consumers for various purposes.” Fed. Trade Comm’n, Protecting Consumer Privacy in an Era of Rapid Change: Recommendations for Businesses and Policymakers, at 68 (Mar. 2012), available at http://www.ftc.gov/os/ 2012/03/ 120326privacyreport.pdf. Information aggregated by entities such as Softech can aid law enforcement actions. Disclosures, however, may also be made to private citizens or entities, and individuals are *46 often unaware that their personal information is being aggregated and sold. See id.
Defendant-appellee Dan Cohn owns and operates defendant-appellee Arcanum Investigations (together, “Arcanum”), a private investigation service. By agreement, Softech provides Arcanum with access to its motor vehicle records; Arcanum represents that it and, to the extent it resells this information, any end user will use the information in a manner permitted by law.
Arcanum owns and operates Docusearch.com. For a small fee, Docusearch.com provides its users with the personal information associated with, for example, a license plate number. When a Docusearch.com user inputs a New York State license plate number, Arcanum provides that number to Softech and requests the associated motor vehicle record for private investigative purposes. Arcanum cannot access New York State motor vehicle records directly from the state DMV, and hence it requests this information from Softech. Then, pursuant to their agreement, Softech relays the motor vehicle record for that license plate number to Arcanum. Arcanum, through the Docusearch.com website, then provides that information to its customer.
Thus, Arcanum and Softech are both resellers (together, the “Resellers”) of personal information drawn from motor vehicle records.
C. The Facts
Except as noted below, we construe the facts in the light most favorable to Gordon, the party opposing summary judgment. On the evening of October 10, 2009, Gordon was dining at a restaurant in New York City. His driver waited outside in Gordon’s car, a vintage London taxicab. Its New York State license plate was registered in Gordon’s name.
Leifer was parked across the street in an SUV. He and Gordon’s driver engaged in a brief verbal altercation. Gordon’s driver drove away, but Leifer gave chase. Gordon’s driver then drove to a police precinct on East 67th Street and waited for Leifer to leave the area. The driver then returned to wait for Gordon outside the restaurant.
The parties dispute whether the two cars collided that evening. Leifer claimed that they did, but he never contacted the police or filed an insurance claim. At some point that night, Leifer wrote down the license plate number of Gordon’s vehicle.
The next day, on October 11, 2009, Leif-er input Gordon’s license plate number on Docusearch.com. From a dropdown menu of purposes deemed by Docusearch.com to be permissible under the DPPA, Leifer selected “Insurance Other.” A popup window noted:
You are required to select a DPPA Permissible Purpose. By imputting [sic] your response, you hereby certify that you are in, and assume full responsibility for, compliance with the Driver’s Privacy Protection Act of 1994 (DPPA) and you agree to indemnify, defend and hold Docusearch harmless from any breach of the DPPA by you, your agents or contractors and any damages, fees and costs associated therewith.
Leifer clicked “OK.” To finalize the purchase, Docusearch.com requested his personal information. Leifer provided an alias — “Jack Loren” — and stated that he worked for a business, later discovered to be defunct, called Bodyguards.com. He also provided a credit card number, which he represented was issued to “Jack Loren” when, in fact, it was issued in Leifer’s own name. Finally, mere hours after making a $89.00 payment, Leifer received Gordon’s name and home address.
*47 Using this information, Leifer executed a series of Internet searches and identified Gordon’s phone number, the members of Gordon’s family and acquaintances, and their contact information. Leifer then called Gordon’s assistant, his mother, and his father’s secretary. During these calls, Leifer made threatening comments, which included, to Gordon’s mother, the false allegation that Gordon had sexually assaulted a woman. Leifer does not deny making phone calls, but asserts that, due to the alleged collision, he merely tried to contact Gordon to request his insurance information.
D. Procedural History
Gordon’s amended complaint dated January 5, 2011 alleged that Leifer and the Resellers had violated the DPPA.[1] Specifically, Gordon contended that Leifer had misused his personal information and that the Resellers either unreasonably disclosed it or were strictly liable for Leifer’s misdeeds.' Defendants jointly filed a motion to dismiss in March 2011, which the district court denied. See Gordon v. Softech Int’l Inc., No. 10 Civ. 5162, 2011 WL 1795300 (S.D.N.Y. Apr. 28, 2011).
After discovery, the parties cross-moved for summary judgment. In a November 30, 2011 Decision & Order, the district court denied Gordon’s motion for summary judgment, but granted in part and denied in part the motion filed jointly by Resellers and Leifer. Without addressing Gordon’s alternative theory that Resellers were subject to a duty of reasonable inquiry, the court concluded that, as a matter of law, Resellers could not be strictly liable for Leifer’s alleged DPPA violation and granted summary judgment in favor of the Resellers. Gordon v. Softech Int’l, Inc., 828 F.Supp.2d 665, 675-76 (S.D.N.Y.2011). As to Leifer, however, the district court concluded that material questions of fact precluded summary judgment regarding his liability under the DPPA.[2] Id. at 673-74.
On December 8, 2011, Gordon filed a letter seeking a conference to request reconsideration of the district court’s decision. Gordon argued that “a genuine issue of material fact exist[ed] as to whether the Resellers’ conduct in relying on the end-user’s representations ... constitute^] a willful or reckless violation” of the DPPA. The district court subsequently set a trial date for Gordon’s claim against Leifer while also noting that “the trial date of course is without prejudice to your application for reconsideration.” Before trial, Gordon and Leifer settled their dispute.
By a January 17, 2012 order, the district court discontinued the “above-entitled action.” On February 15, 2012, in response to an inquiry from Gordon, the district court issued a Decision & Order stating that the motion for reconsideration had been discontinued by its prior order “as it was rendered moot when the parties settled.” It further noted that, even if the motion were not moot, it “would have been *48 denied for substantially the same reasons set forth” in the court’s earlier decision.
On February 16, 2012, Gordon appealed from the district court’s (1) grant of summary judgment to Resellers, (2) order of discontinuance, and (3) denial of the motion of reconsideration.

DISCUSSION

Undisputedly, Softech disclosed Gordon’s personal information, drawn from a motor vehicle record, to Arcanum, which then disclosed it to Leifer. Assuming Leifer used the information for improper purposes, we now consider whether Resellers may be liable to Gordon under the DPPA, and, if so, the circumstances under which liability may arise.[3]
A. Applicable Law
1. Standard of Review
Summary judgment is appropriate when “there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.” Fed. R.Civ.P. 56(a). We review de novo a district court’s grant of summary judgment after construing all evidence, and drawing all reasonable inferences, in favor of the non-moving party. See, e.g., McElwee v. Cnty. of Orange, 700 F.3d 635, 640 (2d Cir.2012). Furthermore, our review of a district court’s interpretation of a federal statute is also de novo. See, e.g., Muller v. Costello, 187 F.3d 298, 307 (2d Cir.1999).
2. Rules of Construction
When construing a statute, we begin with the plain meaning and give all undefined terms their ordinary construction. See Schindler Elevator Corp. v. United States ex rel. Kirk, — U.S. -, 131 S.Ct. 1885, 1891, 179 L.Ed.2d 825 (2011); United States v. Desposito, 704 F.3d 221, 226 (2d Cir.2013). We are mindful, of course, that “[a]n exception to a general statement of policy is usually read narrowly in order to preserve the primary operation of the provision.” Maracich v. Spears, — U.S. -, 133 S.Ct. 2191, 2200, 186 L.Ed.2d 275 (2013) (omission, quotation, and internal quotation marks omitted). Our analysis, “absent ambiguity, will generally end there.” Collazos v. United States, 368 F.3d 190, 196 (2d Cir.2004).
If, however, the statute is ambiguous, “we focus upon the broader context and primary purpose of the statute.” Castellano v. City of N.Y., 142 F.3d 58, 67 (2d Cir.1998) (internal quotation marks omitted). In so doing, we may turn to the legislative history as a reflection of congressional intent. See Puello v. Bureau of Citizenship & Immigration Servs., 511 F.3d 324, 327 (2d Cir.2007). In all events, however, we must construe the statute “so that no part will be inoperative or superfluous, void or insignificant.” Corley v. United States, 556 U.S. 303, 314, 129 S.Ct. 1558, 173 L.Ed.2d 443 (2009) (quotation omitted).
*49 3. The DPPA
? the DPPA, state DMVs, individuals, organizations, and entities may not disclose “personal information” drawn from motor vehicle records unless permitted by statute.[4] 18 U.S.C. §§ 2721(a) (state entities), 2722(a) (private individuals and entities); see also Reno, 528 U.S. at 149-50, 120 S.Ct. 666 (upholding constitutionality of DPPA). The default rule is one of non-disclosure, but the statute also identifies fourteen exceptions—“permissible uses”—for which disclosure is allowed. See 18 U.S.C. § 2721(b). In relevant part,
Personal information [protected by the DPPA] ... may be disclosed as follows:
(6) For use by any insurer or insurance support organization, or by a self-insured entity, or its agents, employees, or contractors, in connection with claims investigation activities, antifraud activities, rating or underwriting.
(8) For use by any licensed private investigative agency or licensed security service for any purpose permitted under this subsection.
Id. § 2721(b)(6), (8).
The DPPA also regulates the resale and redisclosure of protected personal information:
An authorized recipient of personal information (except a recipient under subsection (b)(ll) or (12)) may resell or redisclose the information only for a use permitted under subsection (b) (but not for uses under subsection (b)(ll) or (12)).
Id. § 2721(c).[5] “Authorized recipient” is not defined by statute. But see Reno, 528 U.S. at 146, 120 S.Ct. 666 (citing section 2721(c) and declaring that DPPA regulates resale and redisclosure by “private persons who have obtained [drivers’ personal] information from a state DMV”).
The DPPA creates a civil cause of action for those whose information has been improperly used or disclosed. See 18 U.S.C. § 2724(a). Certain civil remedies may be imposed against any “person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted” by the DPPA. Id. These remedies vary; the court may award:
(1) actual damages, but not less than liquidated damages in the amount of $2,500;
(2) punitive damages upon proof of willful or reckless disregard of the law;
(3) reasonable attorneys’ fees and other litigation costs reasonably incurred; and
(4) such other preliminary and equitable relief as the court determines to be appropriate.
Id. § 2724(b).
B. Application
Gordon argues that the Resellers are subject to civil penalties under the DPPA. First, Gordon contends that the Resellers should be strictly liable for misuses of his information by downstream recipients. Second, in the alternative, Gordon asserts that Resellers are liable because of their own actions: (a) Resellers disclosed his *50 information for a use that was not expressly permitted by the DPPA, and (b) Resellers did not exercise due care when releasing his personal information. We address each argument in turn.
1. Strict Liability for Downstream Acts
Gordon primarily argues that Resellers should be held strictly liable for civil penalties based on Leifer’s improper use of Gordon’s personal information. We conclude that a strict liability standard is inconsistent with the DPPA as a whole and would frustrate its legislative aims.
The text of the DPPA does not support — either explicitly or implicitly — a strict liability standard. Although, as described below, the text and structure of the DPPA can be read to support a duty of reasonable inquiry, nothing in the DPPA suggests that a reseller is responsible, regardless of whether it is at fault, for an end user’s misuse of personal information. Moreover, no case law interpreting the DPPA suggests that a reseller could be strictly liable for downstream violations by another party. But cf. Pichler v. UNITE, 542 F.3d 380, 396-97 (3d Cir.2008) (end user liable for own actions, even if it did not know those actions would violate DPPA).
We note, moreover, that strict liability offenses, while “not unknown to the criminal law,” are “generally disfavored.” United States v. U.S. Gypsum Co., 438 U.S. 422, 437-38, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978); see also United States v. Burwell, 690 F.3d 500, 505 (D.C.Cir.2012); Am.-Arab Anti-Discrimination Comm. v. City of Dearborn, 418 F.3d 600, 610 (6th Cir.2005). Gordon’s appeal, of course, arises in the civil context, but the provision describing a criminal offense under the DPPA mirrors the language describing a civil cause of action.[6] This similarity suggests that “knowingly” is read the same way in both provisions. See Dep’t of Revenue of Or. v. ACF Indus., Inc., 510 U.S. 332, 342, 114 S.Ct. 843, 127 L.Ed.2d 165 (1994) (“normal rule of statutory construction” is that “identical words used in different parts of the same act are intended to have the same meaning” (quotation and internal quotation marks omitted)). But see Kirtsaeng v. John Wiley & Sons, Inc., — U.S. -, 133 S.Ct. 1351, 1362, 185 L.Ed.2d 392 (2013) (acknowledging general rule, but applying different canon of interpretation). We are loathe to write strict liability into the DPPA absent a clear indication in the text or the legislative history that strict liability applies.
The notion of strict liability is also inconsistent with at least some of the congressional concerns that prompted the DPPA. The DPPA sought to “strike[] a critical balance between an individual’s fundamental right to privacy and safety and the legitimate governmental and business needs for this information.” 145 Cong. Rec. H2522 (daily ed. Apr. 20,1994) (statement of Rep. Moran), available at 1994 WL 140035; see also id. at H2527 (statement of Rep. Goss). Congress knew that legitimate businesses used information derived from motor vehicle records and ensured continued access to it through the DPPA. See, e.g., 139 Cong. Rec. S15762-63 (daily ed. Nov. 16,1993) (statement of Sen. Hatch), available at 1993 WL 470986; Driver’s Privacy Protection Act: Hear *51 ings on H.R. 3365 Before the Subcomm. on Civil & Constitutional Rights of the House of Rep. Comm, on the Judiciary, 103rd Cong. (Feb. 3^4, 1994). In fact, Congress was cognizant of the concerns raised by the business community, and consequently it broadened the exceptions to non-disclosure in the law. See 140 Cong. Rec. H2523 (daily ed. Apr. 20, 1994) (statement of Rep. Moran) (noting that revised DPPA addressed commercial concerns raised during subcommittee hearings), available at 1994 WL 140035.
“[W]e will not interpret a statute in a way ‘that apparently frustrates the statute’s goals, in the absence of a specific congressional intention otherwise.’” United States v. Livecchi, 711 F.3d 345, 351 (2d Cir.2013) (quoting New York v. Shore Realty Corp., 759 F.2d 1032, 1045 (2d Cir.1985)). Thus, because we conclude that neither the text nor the legislative history of the DPPA supports reading a strict liability standard into the DPPA, we hold that Resellers are not strictly liable for Leifer’s improper use of Gordon’s personal information.
2. Resellers’ Liability Due to Their Own Actions
a. Disclosure for an Impermissible Use
Gordon contends that the Resellers disclosed his personal information for a use that was not specifically identified in the DPPA’s list of fourteen exceptions. See 18 U.S.C. § 2721(b). We review the disclosure of each Reseller separately and conclude that, while Softech disclosed Gordon’s personal information for a permitted use, a material question of fact exists as to the propriety of Arcanum’s disclosure.
i. Softech
Gordon alleges that Softech disclosed his personal information to Arcanum even though Arcanum did not identify a permissible use; this argument is merit-less. When Arcanum, a private investigative agency, requested Gordon’s personal information from Softech, it selected “DPPA Purpose No. 8.” Rodriguez Dep. 49:8-11, Feb. 16, 2011; Cohn Dep. 29:3-10, Apr. 13, 2011. .This corresponds to the exception in section 2721(b)(8), “[f]or use by any licensed private investigative agency .... for any purpose permitted under this subsection.” 18 U.S.C. § 2721(b)(8); see also Rodriguez Dep. 49:12-16.
Hence, this exception includes two limiting factors: (1) the entities that may claim the exception, and (2) the purposes for which information may be requested. Arcanum’s request satisfied both requirements. First, as discussed above, Arcanum was a licensed private investigative agency and therefore eligible to claim the exception. Second, Arcanum had provided Softech with an Affidavit of Intended Use that specifically identified three intended uses for the records requested, all of which complied with exceptions in section 2721(b).[7]
When Softech accessed the New York State DMV database and provided Arcanum with Gordon’s name,, address, and additional information pertaining to his car, it disclosed that information pursuant to an exception in section 2721(b), to an entity eligible to invoke the exception, for three purposes permitted by the DPPA. See 18 U.S.C. § 2721(b)(8). Therefore, the district court correctly concluded as a matter of law that Softech had dis *52 closed Gordon’s personal information for a use expressly permitted by statute.[8]
ii. Arcanum
Arcanum disclosed Gordon’s personal information to Leifer based on Leif-er’s selection of “Insurance Other” from the Docusearch.com dropdown menu. Gordon contends that “Insurance Other” did not correspond to a permitted use.[9]
Although Resellers insist that Gordon waived this argument by failing to raise it below, we disagree. Gordon’s amended complaint noted that Arcanum “disclosed ... Gordon’s personal information without a permissible use under the DPPA.” Amended Complaint, ¶¶ 79, 81. This necessarily implied that Gordon challenged whether the stated use — “Insurance Other” — fell within the section 2721(b) exceptions.[10] Furthermore, Gordon argued below that “to qualify under [the insurance exception] you have to either be an insurance company or a self-insured entity.” Nov. 22, 2011 Tr., at 17:21-23. Counsel for Arcanum was present, but did not object. Accordingly, we determine that the issue was not waived.
Under a textual approach, “Insurance Other” does not track the language of the insurance exception, which allows a person to disclose or use DPPA-protected personal information “in connection with claims investigation activities, antifraud activities, rating or underwriting.” 18 U.S.C. § 2721(b)(6). Thus, a disclosure for “Insurance Other” could be outside the scope of the statute, as the generic phrase encompasses many insurance-related activities beyond the stated activities of section 2721(b)(6). See Maracich, 133 S.Ct. at 2199-2200 (examining DPPA’s litigation exception and noting that “[u]nless commanded by the text ... these exceptions ought not operate to the farthest reach of their linguistic possibilities if that result would contravene the statutory design”).
The insurance exception, moreover, may only be claimed by certain entities: an “insurer or insurance support organization, or [ ] a self-insured entity.” Id. § 2721(b)(6). When deposed, Leifer conceded that he did not work at an insurance company, and could not identify what a self-insured entity or an insurance support organization was. Leifer Dep. 81:22 to 82:19, July 12, 2011. Arcanum has pointed to nothing in the record to suggest that Leifer was, in fact, eligible to request information pursuant to that exception. Thus, even if we were to assume that a *53 collision had occurred, an insurance claim had accrued, and “Insurance Other” was coterminous with section 2721(b)(6), a reasonable jury could easily find that Leifer was not eligible to request information pursuant to the insurance exception.
The Resellers insist that “Insurance Other” covered all insurance-related uses, but only to the extent contemplated by the exception in section 2721(b)(6). This argument relies on the fact that each Doeusearch.com customer certified that it was “in, and assume[d] full responsibility for, compliance with the Driver’s Privacy Protection Act of 1994” by clicking “OK” on a pop-up window. Furthermore, the customer also checked a box, thereby consenting to the terms of a “Client Agreement,” in which the customer “represent[ed] and warrant[ed] that it will provide Docusearch with accurate and complete information regarding the searches requested, and that search results will not be used for any purpose other than the purpose stated to Docusearch.”
We need not decide whether these representations sufficiently narrowed the scope of “Insurance Other”; Resellers’ argument still ignores the fact that only certain entities are eligible to claim the insurance exception. Whether Leifer is one of them is determinative of Arcanum’s liability. If Leifer was not eligible to claim that exception, Arcanum’s disclosure would have been for a use not permitted by section 2721(b). Hence, with respect to Arcanum, we conclude that the district court erred by granting summary judgment without having first considered (1) whether Leifer was eligible to request information pursuant to the insurance exception, (2) if so, whether a collision had occurred, and (3) if so, whether an insurance claim had accrued. These material questions of fact preclude summary judgment as to Arcanum’s liability.
b. Resellers[9] Duty of Reasonable Care: Legal Framework
Gordon further contends that, even if Resellers disclosed his personal information for what they believed to be a permitted use, they are still liable because they violated -a duty of reasonable care imposed by the DPPA. Resellers contend that the DPPA imposes no such duty. Based on the language of the statute, its structure, and its legislative history, we conclude that the DPPA imposes a duty on resellers to exercise reasonable care in responding to requests for personal information drawn from motor vehicle records.
i. The Statutory Language
The default rule under the DPPA is nondisclosure. It is unlawful for a state DMV or any employee or officer thereof to “knowingly disclose or otherwise make available to any person or entity ... personal information” obtained from a motor vehicle record, except as provided in section 2721(b). 18 U.S.C. §. 2721(a). Resellers are subject to the same general rule of non-disclosure; with limited exceptions not relevant here, resellers “may resell or re-disclose the information only for a use permitted under subsection (b).” Id. § 2721(c) (emphasis added); see also Taylor v. Acxiom Corp., 612 F.3d 325, 338 (5th Cir.2010).
Moreover, the DPPA creates a civil cause of action for unauthorized disclosure: section 2724(a) provides that a “person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court.” 18 U.S.C. § 2724(a). Logically, the language makes clear, albeit implicitly, that resellers are obliged to use *54 some care in disclosing personal information obtained from motor vehicle records. If resellers may not disclose personal information except as permitted by the DPPA, they must be obliged to make some inquiry before concluding that disclosure is permitted. See also Roth v. Guzman, 650 F.3d 603, 618 (6th Cir.2011) (Clay, J., dissenting) (rejecting notion that upstream source had “no actual duty ... other than the ministerial task of soliciting rote representations from prospective requesters” of DPPA-protected personal information). It would make no sense that this obligation could be met simply by accepting an end user’s mere “say-so” in the presence of red flags suggesting the requested information was being sought for an improper purpose. Under this theory, advocated by Resellers, an upstream source could always avoid liability by securing a representation that the recipient of personal information had a permissible use or by hiding behind one or more dropdown menus so that a user would always — and could only — select a permitted use. The civil remedies provision would be rendered toothless if resellers could insulate themselves from liability based solely on the conclusory representations of end users, without being required to exercise due care themselves.
We note also that the statute’s use of the word “knowingly” is not inconsistent with the notion that some duty of care exists. Cf. id. Case law is replete with situations where knowledge contemplates what a party “knew or should have known.”[11] Negligence law in particular frequently invokes the concept of constructive knowledge when deciding whether a particular outcome was foreseeable,[12] and criminal law applies a similar concept when imposing criminal liability under a theory of conscious avoidance.[13]
ii. The Structure of the Civil Penalties Provision
The structure of the DPPA also supports the conclusion that resellers owe a duty of reasonable care. The DPPA provides that a court may award “punitive damages upon proof of willful or reckless disregard of the law.” 18 U.S.C. § 2724(b)(2); see also Pichler, 542 F.3d at 397 (willful or reckless disregard is when “a party appreciated it was engaging in wrongful conduct” (internal quotation marks omitted)). In contrast, the preceding subdivision provides that the court *55 may award “actual damages, but not less than liquidated damages in the amount of $2,500.” 18 U.S.C. § 2724(b)(1). The actual damages provision is silent as to the degree of fault necessary to trigger liability for actual damages. If, however, as the statute suggests, punitive damages are available only for willful and reckless violations of the DPPA, then actual damages must require something less — that is, conduct that is neither willful nor reckless.
As we have rejected a theory of strict liability, the most appropriate standard, in our view, is reasonableness: a reasonableness standard best harmonizes the wording, the structure, and, as discussed below, the purpose of the DPPA. Accordingly, we conclude that a reseller is liable for actual (or liquidated) damages when it fails to use reasonable care to ensure that personal information is being obtained for a permissible purpose.
We note too that the Department of Justice (“DOJ”) has reached a similar conclusion. In a non-binding advisory opinion, DOJ concluded that a state DMV could release personal information to resellers “upon reasonably concluding that the information [requested by the commercial distributor] will be used for authorized purposes only.” Letter from Robert C. McFetridge, Special Counsel to the Assistant Att’y Gen., Civil Div., Dep’t of Justice, to Peter Sacks, Office of the Att’y Gen., The Commonwealth of Mass. (Oct. 9, 1998) (on file with the Court) [hereinafter “DOJ Letter”], at 2 (emphasis added); see also, e.g., Graczyk v. W. Publ’g Co., 660 F.3d 275, 280-81 (7th Cir.2011) (discussing DOJ Letter), cert. denied, — U.S. -, 132 S.Ct. 2391, 182 L.Ed.2d 1020 (2012); Taylor, 612 F.3d at 339 (same). An entity cannot reasonably conclude that a person or entity may access DPPA-protected personal information if it does not exercise some modicum of care. See Cook v. ACS State & Local Solutions, Inc., 663 F.3d 989, 997 (8th Cir.2011) (summarizing DOJ letter as stating that states must “reasonably conclude that the information would be used only for authorized purposes”).
iii. The Legislative History
We acknowledge that there is some ambiguity in the statute. The DPPA does not explicitly provide for a duty of reasonable care, and it is silent as to the degree of fault necessary for an award of actual or liquidated damages.
Moreover, the word “knowingly,” as used in sections 2722(a) and 2724(a), is ambiguous: depending on one’s reading of the statute, civil liability could attach (1) to any act committed intentionally, or (2) only for an act undertaken with knowledge of an improper purpose. For example, in Pichler v. UNITE, 542 F.3d 380 (3d Cir.2008), the Third Circuit concluded that the end user — a union — could be civilly liable for using DPPA-protected personal information for an improper purpose even though, at the time, the union did not know that its purpose would be deemed improper. Id. at 396-97. By contrast, in Roth v. Guzman, 650 F.3d 603 (6th Cir.2011), the Sixth Circuit concluded that a state DMV was not subject to civil liability under the DPPA unless it actually knew that the recipient, who had represented that it had a permissible use for the requested DPPA-protected personal information, would use it for an improper purpose. Id. at 611-12. We need not resolve the disagreement, however, as both Pichler (addressing use by an end user) and Roth (addressing disclosure by the state) are distinguishable from this case, which addresses disclosure by resellers.
In light of the ambiguity in the statute, we look to its legislative history, and the legislative history supports the conclusion that resellers must exercise some degree *56 of care. The legislative history emphasized that the DPPA would protect “an individual’s fundamental right to privacy and safety.” 145 Cong. Rec. H2522 (daily ed. Apr. 20, 1994) (statement of Rep. Moran), available at 1994 WL 140035; see also id. at H2527 (statement of Rep. Goss). Protecting this right was particularly important in light of two mandates associated with driving: all drivers must register with the state, and no drivers may obscure the license plate number on their cars. See 139 Cong. Rec. S15764 (daily ed. Nov. 16, 1993) (statement of Sen. Boxer), available at 1993 WL 470986; 140 Cong. Rec. H2523 (daily ed. Apr. 20, 1994) (statement of Rep. Moran), available at 1994 WL 144035; 139 Cong. Rec. S14436 (daily ed. Oct. 26, 1993) (statement of Sen. Warner), available at 1993 WL 470986 (drivers that register with the DMV “should do so with full confidence that the information they provide will not be disclosed indiscriminately”). Because disclosures, such as the one made by Softech to Arcanum to Leif-er, are often “totally incompatible with the purpose for which the information was collected,” regulating the circumstances of disclosure was of paramount importance to Congress. See 139 Cong. Rec. S15764 (daily ed. Oct. 26, 1993) (statement of Sen. Boxer), available at 1993 WL 470986.
Concerns that state actions had undermined public safety also catalyzed the enactment of the DPPA, which was passed as part of the Violent Crime Control and Law Enforcement Act of 1994, Pub.L. No. 103-322, 108 Stat. 1796. Congress perceived a need to better regulate disclosure of personal information because such disclosures had been used to stalk, rob, and even kill private citizens. See, e.g., 139 Cong. Rec. E2747 (daily ed. Nov. 3, 1993) (statement of Rep. Moran), available at 1993 WL 448643; 139 Cong. Rec. S15762, S15766 (daily ed. Nov. 16, 1993) (statements of Sen. Boxer and Sen. Harkin). Assuming Gordon’s allegations are true, Leifer’s threats to Gordon’s family and friends were precisely the sort of acts that Congress sought to curtail.
Given the nature of information available through motor vehicle records — e.g., social security number, medical or disability information, and home address — the DPPA’s purpose would be severely undermined if resellers’ disclosures were not subject to a duty of reasonable inquiry. See Reno, 528 U.S. at 151, 120 S.Ct. 666 (“The DPPA regulates the universe of entities that participate as suppliers to the market for motor vehicle information — the States as initial suppliers of the information in interstate commerce and private resellers or redisclosers of that information in commerce.” (emphasis added)). And, in light of the clear congressional intent to safeguard the privacy and safety of drivers, it is inconceivable that a drop-down menu, a check box, and a representation that no laws would be violated could satisfy any reasonable diligence floor. See 139 Cong. Rec. S15765 (daily ed. Nov. 16, 1993) (statement of Sen. Robb), available at 1993 WL 470986; see also Roth, 650 F.3d at 619 (Clay, J., dissenting) (“[T]he DPPA compels the conclusion that the Act imposes ... a duty of reasonable inquiry.”); Welch v. Jones, 770 F.Supp.2d 1253, 1260 (N.D.Fla.2011) (no DPPA violation in reseller’s disclosure where recipient identified its permissible use under penalties of perjury, and reseller verified recipient’s identity, even though the recipient ultimately used the information impermissibly).
In light of the text, structure, and legislative history of the DPPA, we hold that resellers are subject to a duty of reasonable care before disclosing DPPA-protect *57 ed personal information.[14] See 18 U.S.C. § 2721(b)-(c).
c. Resellers’ Duty of Reasonable Care: As Applied to Softech and Arcanum
i. Softech
Softech released Gordon’s personal information per Arcanum’s request for “use by any licensed private investigative agency.” Rodriguez Dep. 49:15-16. Moreover, Softech and Arcanum had an ongoing business relationship through which Softech knew Arcanum was a licensed private investigative agency, and Arcanum had contractually agreed that it would only use information for three purposes permitted by the DPPA. Hence, at a minimum, Softech’s disclosures to Arcanum were permitted by the private investigative agency exception. See 18 U.S.C. § 2721(b)(8). Nothing in the record suggests that, in complying with the information request, Softech acted unreasonably.
Gordon contends that Softech’s disclosure was still unreasonable because Arcanum’s Affidavit of Intended Use affirmed that Arcanum would only use information for three stated purposes — none of which were for public investigative services.[15] Furthermore, the agreement provided that Arcanum was required to “strictly abide” by the terms of the affidavit. Softech contends that its automated system would “check[ ] that the DPPA [permissible use] selected is the one that they actually, upon signing up with us, was the one that they selected on the Affidavit of Intended Use,” and reject the request if it were not. Rodriguez Dep. 46:11-14, 16-20. Yet when Arcanum requested information pursuant to an exception not listed on its Affidavit of Intended Use, Softech did not reject Arcanum’s request; instead, it released Gordon’s personal information.
We do not believe that these circumstances create a genuine issue of fact for trial. Although, when it initially entered into a relationship with Softech, Arcanum agreed that it would seek information only for three permissible purposes, no legal obstacles prevented Arcanum from requesting information from Softech (or precluded Softech from giving information to Arcanum) for other permissible purposes in the future. Moreover, Arcanum was, in fact, a licensed private investigative agency, and Arcanum had provided Softech with an Affidavit of Intended Use that promised that Arcanum would use the information only in accordance with the requirements in section 2721(b)(8). Further, as a reseller, Softech’s disclosure, to a user for an apparently permissible use, was permitted under section 2721(c).[16] Finally, even assuming that Softech had inquired further, nothing in the record suggests that Softech would have uncovered any red flags suggesting the information was being sought for an improper purpose. Hence, we conclude that the district court properly granted summary judgment in favor of Softech.
*58 ii. Arcanum
By contrast, we conclude that a reasonable jury could find that Arcanum failed to exercise reasonable care when it disclosed Gordon’s personal information to Leifer. In seeking the information, Leifer used the alias “Jack Loren.” He used a credit card number that did not match the name “Jack Loren.” He claimed he worked for a business, “Bodyguards.com,” that was not operational. He selected a purpose, “Insurance Other,” that, at least arguably, is not a permitted purpose. He did not provide any information or proof relating to his status as an insurance company, a self-insured entity, or an insurance support organization, to verify his eligibility to invoke the insurance exception.
Arcanum failed to inquire as to Leifer’s eligibility to invoke the insurance exception, and it never checked the accuracy of the purported “Jack Loren” identity or the purported business affiliation. Arcanum apparently did not even bother to verify whether the name associated with the credit card number provided by “Jack Loren” matched the name associated with the Docusearch.com account.
Moreover, the Docusearch.com drop-down menu offered a selection of fourteen purportedly “Permissible Purpose[s],” and instructed the customer that he “Must Select One” of the purportedly permissible purposes. Thus, the Docusearch.com website was designed — as a reasonable jury could so find — to ensure that end users selected one of fourteen purportedly permissible purposes, without providing them with an opportunity to articulate the true purpose — permissible or not — behind a particular records request. Although Arcanum did ask Leifer to represent that he was seeking the information for a lawful purpose, a reasonable jury could find on these facts that Arcanum failed to use reasonable care, and that, had it been reasonably diligent, Arcanum would have discovered that Leifer was seeking the information for an improper purpose. See King v. Crossland Sav. Bank, 111 F.3d 251, 259 (2d Cir.1997) (“[T]he assessment of reasonableness generally is a factual question to be addressed by the jury.”). Accordingly, the district court erred in granting summary judgment to Arcanum.

CONCLUSION

For the reasons set forth above, we AFFIRM the judgment of the district court to the extent it granted summary judgment in favor of Softech International, Inc. and Rodriguez, and we VACATE the judgment to the extent it granted summary judgment in favor of Arcanum Investigations, Inc. and Cohn on Gordon’s claims under the DPPA. We REMAND for further proceedings not inconsistent with this opinion.

. The complaint also asserted claims for prima facie tort and intentional infliction of emotional harm against Leifer and other unnamed defendants (but not the Resellers). Gordon’s brief is silent as to these claims, and we conclude Gordon abandoned any challenge to the dismissal of these claims. Jackler v. Byrne, 658 F.3d 225, 233 (2d Cir.2011) (claims for which "brief on appeal contains no argument" are deemed abandoned).

. The district court’s Decision & Order also granted summary judgment in favor of Leifer as to the intentional infliction of emotional distress claim, but allowed the prima facie tort claim to proceed. Gordon v. Softech Int’l, Inc., 828 F.Supp.2d 665, 679 (S.D.N.Y.2011). Neither claim is relevant to this appeal.

. Resellers argue that this appeal is untimely because Gordon did not file his notice of appeal until February 16, 2012, more than thirty days after the district court’s November 30, 2011 Decision & Order. See Fed. R.App. P. 4(a). The argument is frivolous. The November 30 Decision & Order was a nonappealable order because it did not dispose of all claims. See Fed.R.Civ.P. 54(b). An appealable order was not entered until January 17, 2012, and Gordon's February 16, 2012 notice of appeal was thus filed within thirty days. In addition, even assuming the November 30 Decision & Order was a final order, the district court clearly treated Gordon’s December 8, 2011 letter as a motion for reconsideration, and thus, the motion tolled Gordon's time to appeal. Fed. R.App. P. 4(a)(4). Hence, despite Resellers' arguments to the contrary, we have jurisdiction to hear this appeal.

. "Personal information” includes "an individual’s photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information." 18 U.S.C. § 2725(3).

. Individuals may consent to disclosure of their personal information, see id. § 2721(b)(13), and subsections (b)(ll) and (b)(12) of section 2721 capture those scenarios. .Gordon never consented to the release of his personal information.

. Compare id. § 2722(a) ("It shall be unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title.” (emphasis added)), with id. § 2724(a) ("A person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter” may be liable in a civil action (emphasis added)).

. Specifically, the affidavit indicated that Arcanum would use information only for the purposes outlined in section 2721(b)(3) (for limited purposes in the normal course of business), section 2721(b)(7) (to provide notice to owners of towed or impounded vehicles), and section 2721(b)(13) (when the party in interest had consented in writing).

. Gordon also argues that Softech's disclosure under the private investigative agency exception violated the terms of an agreement between Softech and Arcanum. Under either Florida or New York law, Gordon, because he is a non-party who was not an intended third-party beneficiary of the agreement, cannot allege a DPPA violation on breach of contract grounds. See, e.g., Bochese v. Town of Ponce Inlet, 405 F.3d 964, 981-83 (11th Cir.2005) (discussing Florida law); State of Cal. Pub. Emps.' Retirement Sys. v. Shearman & Sterling, 95 N.Y.2d 427, 434-35, 718 N.Y.S.2d 256, 741 N.E.2d 101 (2000) (discussing New York law).

. Although Resellers further argue that Leifer wanted Gordon's personal information in preparation for litigation, pursuant to the exception in section 2721(b)(4), Leifer only claimed one exception — "Insurance Other.” Section 2722(a) prohibits disclosure "for any use not permitted” by statute, and Arcanum did not know that Leifer's use might later qualify for this exception. A reseller's ex post decision about a recipient’s intended use of information cannot justify its decision to disclose the information in the first place.

.When cross-moving for summary judgment, Gordon explicitly argued that "Insurance Other” was not a permitted use, but made that argument only with respect to Softech.

. See, e.g., Farmer v. Brennan, 511 U.S. 825, 843 n. 8, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (inferences not conclusive but prison official in Bivens suit "would not escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist”); In re Potomac Transp., Inc., 909 F.2d 42, 46 (2d Cir.1990) (construing privity and knowledge under provision of maritime law to mean ship owner knew or should have known that particular condition existed).

. See, e.g., Ehrens v. Lutheran Church, 385 F.3d 232, 235 (2d Cir.2004) (to state claim of negligent supervision, plaintiff must allege, inter alia, that employer knew or should have known of employee’s propensity for injury-causing conduct); 'Williams v. Long Island R.R. Co., 196 F.3d 402, 406 (2d Cir.1999) (employer may breach liability under Federal Employers Liability Act, 45 U.S.C. § 51 et seq., if it knew or should have known of workplace hazard but did not inform or protect its employees).

.See, e.g., United States v. Beech-Nut Nutrition Corp., 871 F.2d 1181, 1195 (2d Cir.1989) (finding conscious avoidance applies when "defendant claims to lack some specific aspect of knowledge necessary to conviction but where the evidence may be construed as deliberate ignorance” (citation and internal quotation marks omitted)); United States v. Finkelstein, 229 F.3d 90, 95-96 (2d Cir.2000) (distinguishing conscious avoidance from negligence but holding it is relevant when considering sentencing enhancements).

. Notwithstanding the similarities among upstream sources of DPPA-protected personal information, as this case does not require us to consider the effect on state DMVs, we limit our holding to private resellers under the statute.

. See supra note 7.

. We further note that each of the four Courts of Appeals to have considered the issue has concluded that resellers (like Softech and Arcanum) need not themselves use the information before disclosing it in a manner permitted by the DPPA. See Cook v. ACS State & Local Solutions, Inc., 663 F.3d 989, 997 (8th Cir.2011); Graczyk v. W. Publ’g Co., 660 F.3d 275, 279-80 (7th Cir.2011); Howard v. Criminal Info. Servs., Inc., 654 F.3d 887, 891-92 (9th Cir.2011); Taylor v. Acxiom Corp., 612 F.3d 325 (5th Cir.2010).